UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| FRANK LABARRE | * | |
| | * | CIVIL ACTION NO. _____ |
| Plaintiff | * | |
| | * | SECTION: _____ |
| VERSUS | * | |
| | * | JUDGE: _____ |
| BIENVILLE AUTO PARTS INCORPORATED; | * | |
| BORG WARNER MORSE TEC, LLC | * | MAG. JUDGE: _____ |
| (as successor-by merger to BORG WARNER | * | |
| CORPORATION; FLEET TIRE SERVICE | * | |
| INCORPORATED; FORD MOTOR COMPANY; | * | |
| HONEYWELL INTERNATIONAL, INC.; | * | |
| HUNTINGTON INGALLS INCORPORATED | * | |
| (formerly NORTHROP GRUMMAN | * | |
| SHIPBUILDING, INC., formerly NORTHROP | * | |
| GRUMMAN SHIP SYSTEMS, INC., formerly | * | |
| AVONDALE INDUSTRIES, INC., and formerly | * | |
| AVONDALE SHIPYARDS, INC., formerly | * | |
| AVONDALE MARINE WAYS, INC.); and | * | |
| UNITED FIRE & CASUALTY COMPANY. | * | |
| COMPANY, INC. | * | |
| | * | |
| Defendants | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## **NOTICE OF REMOVAL**

NOW INTO COURT, through undersigned counsel, comes defendant, Huntington Ingalls Incorporated, f/k/a Northrop Grumman Shipbuilding Inc., f/k/a Northrop Grumman Ship Systems, Inc., f/k/a Avondale Industries, Inc., f/k/a Avondale Shipyards, Inc. (hereinafter "Avondale"), who, pursuant to 28 U.S.C. §§ 1441, 1442, and 1446, notices the removal of the above-entitled action bearing No. 2017-9293 on the docket of the Civil District Court for the Parish of Orleans, State of Louisiana (the "State Case"), to the United States District Court for the Eastern District of Louisiana.

00754604

1.

This Court has subject matter jurisdiction because the State Case is an action for or relating to conduct under color of federal office commenced in a state court against persons acting under one or more federal officers within the meaning of 28 U.S.C. § 1442(a)(1).

2.

Venue is proper in this Court because it is the district court for the district in which the State Case is pending. 28 U.S.C. § 1442(a).

3.

Avondale is named as a defendant in the State Case, which Frank Labarre filed on September 27, 2017.[1] Mr. Labarre alleged that he contracted a "probable asbestos-related lung condition" in October of 2016, as a result of exposure to asbestos that he sustained between 1948 and 2007.[2] Mr. Labarre alleged that he was exposed to asbestos-containing products "while performing job duties unrelated to the business of [Avondale]" on Avondale's premises.[3] Mr. Labarre died on January 6, 2018, and his wife and daughter were substituted as plaintiffs.[4]

4.

The petitions made broad allegations of exposure to asbestos but provided no details as to where, when, or how Mr. Labarre was exposed to asbestos on Avondale's premises. More specifically, the allegations contained in the petitions did not link Mr. Labarre's alleged asbestos exposures to any vessels that Avondale built, refurbished or repaired for the United States government.

---

[1] Exhibit A, Petition for Damages.
[2] *Id*. at ¶¶ 10-11.
[3] *Id*. at ¶ 24.
[4] *See* Exhibit B, First Supplemental and Amended Petition for Damages. Subsequently, Mr. Labarre's wife died; Mr. Labarre's daughter remains as the plaintiff in the State Case.

5.

Mr. Labarre was deposed on April 26, 2017.[5]  Mr. Labarre testified that he went to Avondale to make sales calls during his employment by Glass Tire, and that he continued making sales calls to Avondale after he left Glass Tire and opened his own business, Fleet Tire.[6]  Mr. Labarre left Glass Tire in 1965.[7]  Mr. Labarre testified that his sales calls to Avondale occurred "every week or two" during a four- to five-year period.[8]  He further testified that he never went aboard any ships at Avondale; he did not go near any shops where work was being performed; and the shipbuilding area was "way off" and appeared to be "a couple of blocks" from the area of the yard that he visited.[9]  Mr. Labarre did not identify anything he was exposed to at Avondale that he believed contained asbestos.[10]

6.

On January 11, 2021, the plaintiff served Avondale with her responses to Avondale's Supplemental Requests for Admissions, Interrogatories, and Requests for Production of Documents.[11]  In response to Interrogatory No. 1, which requested the plaintiff to specify the nature and manner in which she alleges Mr. Labarre was exposed to asbestos at Avondale, the plaintiff answered that Mr. Labarre made sales calls to Avondale's Main Yard "every week for hours at a

---

[5] Exhibit C, Deposition of Frank Labarre, taken on April 26, 2017.

[6] *Id*. at 99-100.

[7] *Id*.; *see also* Exhibit D, Certified Social Security Administration Itemized Statement of Earnings for Frank Labarre.

[8] Exhibit C, Deposition of Frank Labarre, pp. 30-32, 41, 88, 99-100.

[9] *Id*. at 34-35, 92-95.

[10] *Id*. at 101.

[11] Exhibit E, Plaintiff's Answers to Supplemental Requests for Admission, Interrogatories and Requests for Production of Documents Propounded by Defendant, Huntington Ingalls, Inc.

time from the early 1970's through at least 1990."[12] They further responded that "countless ships were being constructed at the Main Yard and thousands of tons of asbestos was bought by Avondale and used, handled, cut, torn, ripped, installed and removed at the Main Yard by Avondale employees and its contractors during this time." Additionally, the plaintiff stated, "Avondale's trucks and other vehicles transported asbestos to and from the Main Yard," and that "the tires that Frank Labarre had to inspect traversed the main yard and other areas where asbestos was used and asbestos dust had settled."[13] Thus, the discovery responses revealed, for the first time, that the plaintiff is alleging Mr. Labarre was exposed to asbestos that was being used specifically for the construction of vessels at Avondale. Additionally, the discovery responses indicate that the plaintiff is now alleging asbestos exposure at Avondale during 1970s and on, whereas Mr. Labarre's testimony suggested that he only visited Avondale during the 1960s.[14]

7.

During the time the plaintiff alleges that Mr. Labarre was exposed to asbestos from vessels under construction at Avondale (based on Mr. Labarre's testimony and the plaintiff's January 11, 2021 discovery responses), Avondale was constructing U.S. Navy Destroyer Escorts, U.S. Coast Guard Cutters, Lykes Lines cargo ships, States Lines cargo ships, Gulf Lines cargo ships, and LASH cargo ships.[15] If Mr. Labarre sustained asbestos exposures at Avondale during this time, which is denied, that exposure is attributable to work being performed in the construction of the above-mentioned vessels.

---

[12] *Id*. at 2.

[13] *Id*.

[14] *Id.*; *see also* Exhibit C, Deposition of Frank Labarre, pp. 99-100; Exhibit D, Certified Social Security Administration Itemized Statement of Earnings for Frank Labarre.

[15] Exhibit F, Record of Vessels Constructed at Avondale.

8.

The plaintiff's January 11, 2021 discovery responses demonstrate that she is now alleging that Mr. Labarre's asbestos exposures at Avondale relate, in part, to asbestos-containing materials being installed aboard and around U.S. Navy Destroyer Escorts, U.S. Coast Guard Cutters, Lykes Lines cargo ships, States Lines cargo ships, Gulf Lines cargo ships, and LASH cargo ships (collectively, the "Federal Vessels"). The Destroyer Escorts and Coast Guard Cutters were being built by Avondale under the detailed supervision and control of one or more officers of the United States. The Lykes Lines, States Lines Gulf Lines, and LASH cargo ships were built by Avondale pursuant to contracts with the United States Maritime Administration. The plaintiff, therefore, is claiming that Mr. Labarre was injured due to asbestos-containing products allegedly installed aboard ships pursuant to contracts with the U.S. Navy, U.S. Coast Guard, and U.S. Maritime Administration.

9.

This removal is being filed within thirty days of Avondale's receipt of the plaintiff's discovery responses on January 11, 2021, and is, therefore, timely under 28 U.S.C. § 1446.

10.

This action involves persons acting under the authority of an officer of the United States within the meaning of 28 U.S.C. § 1442(a)(1). To establish jurisdiction under this statute, a defendant must show: (1) it has asserted a colorable federal defense, (2) it is a "person" within the meaning of the statute, (3) that has acted pursuant to a federal officer's directions, and (4) the charged conduct is related to an act pursuant to a federal officer's directions. *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 296 (5th Cir. 2020) (*en banc*).

11.

Avondale is a "person" within the meaning of 28 U.S.C. § 1442(a)(1). *E.g., Savoie v. Huntington Ingalls Incorporated,* 817 F.3d 457, 461 (5th Cir. 2016).

12.

Avondale was "acting under" an "officer … of the United States or [an] agency thereof" within the meaning of § 1442(a)(1) when they built the Destroyer Escorts and Coast Guard Cutters for the U.S. Navy and U.S. Coast Guard because the United States government contracted with Avondale to perform a task that the federal government otherwise would itself have had to perform—namely, to build ships "used to help conduct a war" and to further other national interests. *E.g.*, *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 153-54 (2007); *Savoie,* 817 F.3d at 461-62 (Avondale was acting under a federal officer in the construction of vessels for the United States Navy).

13.

Avondale was also acting under a federal officer within the meaning of § 1442(a)(1) when it built Lykes Lines, States Lines, Gulf Lines, and LASH cargo ships pursuant to contracts with the U.S. Maritime Administration because the United States government, acting through the U.S. Maritime Administration, had contracted with Avondale to perform a task that the government otherwise would itself have had to perform – to build ships for use as naval and military auxiliaries, to promote foreign and domestic commerce, and to further other important national interests. *Wilde v. Huntington Ingalls, Inc.*, 616 F. App'x 710, 713 (5th Cir. 2015) (Avondale was acting under a federal officer in the construction of vessels for the U.S. Maritime Administration); *Dempster v. Lamorak Ins. Co.*, No. CV 20-95, 2020 WL 468611, at *11 (E.D. La. Jan. 28, 2020) (same).

14.

If Mr. Labarre was exposed to asbestos from work undertaken in conjunction with the construction of the Federal Vessels, the use of asbestos-containing materials on those vessels was required, controlled, and/or authorized by officers of the United States.

15.

The plaintiff's claims against Avondale are claims "for or related to" acts performed under color of federal office within the meaning of the text of 28 U.S.C. § 1442(a)(1) because the charged conduct is "connected or associated with" an act under a federal officer's direction. *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d at 296.

16.

The use and installation of asbestos-containing materials in the construction of Federal Vessels was required by the contractual provisions and design specifications mandated by the federal government acting through the U.S. Navy, U.S. Coast Guard, and U.S. Maritime Administration.

17.

The materials used in the construction of the Federal Vessels – including asbestos-containing materials – were the kind, type, and brand of materials specifically mandated by the Vessel Construction Contracts between Avondale and the United States government, and by the incorporated drawings, plans and specifications for the construction of the Federal Vessels.

18.

The shipbuilding process—specifically including the use and installation of asbestos-containing materials aboard the Federal Vessels—was supervised and monitored by inspectors and other representatives of the United States government to ensure that Avondale complied with the

design specifications mandated by the U.S. Navy, U.S. Coast Guard, and U.S. Maritime Administration.

19.

The inspections by representatives of the United States government included a determination that the supplies (including raw materials, components, and end products) used in the construction of the Federal Vessels were the supplies required by the contracts and specifications, including asbestos-containing thermal insulation and other asbestos-containing materials, as well as non-asbestos insulation materials. Inspections occurred throughout construction and prior to final acceptance of the Federal Vessels.  If Avondale did not use the supplies required by the contracts, including asbestos-containing materials, the federal government could demand that Avondale replace the supplies with conforming materials and/or put Avondale in default of contract.

20.

The United States government required Avondale to provide representatives of the United States government, including government inspectors, with office space and other attendant facilities within the shipyard.

21.

Extensive Dock Trials, Builder's Trials, and Sea Trials on the Federal Vessels were performed by representatives of the United Sates government prior to the commission of each Federal Vessel to ensure conformity with the design specifications mandated by the United States government.

22.

The United States government also promulgated specific safety rules, regulations and requirements for shipbuilding. These regulations included specific permissible safe exposure levels for asbestos pursuant to the Walsh-Healey Public Contracts Act and the U.S. Department of Labor Safety and Health Regulations for Shipbuilding, 29 C.F.R. § 1502.1, which set safety standards to meet the provisions of the Longshore and Harbor Workers' Compensation Act requirements to render Avondale's workplace safe pursuant to 33 U.S.C. § 941. Avondale was guided by and required to comply with these safety regulations during Federal Vessel construction. United States government safety inspectors specifically monitored and enforced these safety regulations as well as the construction of the Federal Vessels on a day-to-day and job-specific basis.

23.

Avondale raises two colorable federal defenses to one or more of the plaintiff's claims in this action. First, one or more of the plaintiff's claims is barred under the jurisprudential doctrine of government contractor immunity established by *Boyle v. United Techs. Corp.,* 487 U.S. 500 (1988), and its progeny. *Latiolais,* 951 F.3d at 297-98 (holding Avondale's *Boyle* defense is colorable). Furthermore, the plaintiff's negligence claims relate to the acts performed under color of federal office.

24.

The reasonably precise design specifications established by the U.S. Navy, U.S. Coast Guard, and U.S. Maritime Administration mandated the installation of asbestos and asbestos-containing products on the Federal Vessels. The Federal Vessels conformed to the specifications mandated by the U.S. Navy, U.S. Coast Guard, and U.S. Maritime Administration—the

specifications mandated the use of asbestos, and Avondale built the Federal Vessels using asbestos. The United States government had knowledge of the potential hazards of asbestos-containing materials in the workplace that was equal to or superior to that of Avondale.

25.

Second, the plaintiff's claims against Avondale are barred by the federal defense of derivative sovereign immunity as set forth in *Yearsley v. W.A. Ross Construction Co.*, 309 U.S. 18 (1940), and its progeny. *Yearsley* established that a federal government contractor, performing at the direction and authorization of a federal government officer, is immune from suit based upon performance of the contract. The *Yearsley* doctrine applies here rendering Avondale immune from suit because Avondale performed the at-issue acts at the direction of federal government officers acting pursuant to federal government authorization.

26.

Removal under 28 U.S.C. § 1442 does not require the consent of any defendant. *See Ely Valley Mines, Inc. v. Hartford Acc. and Indemnity Co.,* 644 F.2d 1310 (9th Cir. 1981); *Bottos v. Avakian,* 477 F. Supp. 610 (N.D. Ind. 1979), *aff'd*, 723 F.2d 913 (7th Cir. 1983).

27.

Because this Court has federal officer jurisdiction over at least one claim asserted by the plaintiff, it has supplemental jurisdiction over the entire action. *Savoie,* 817 F.3d at 463; 28 U.S.C. § 1367(a).

28.

With this Notice, Avondale is filing a "copy of all process, pleadings, and orders served upon" it in the State Case. 28 U.S.C. §§ 1446(a), (d). In addition, written notice is being given to

all adverse parties, and a copy of this Notice is being filed with the Clerk of the Civil District Court for the Parish of Orleans, State of Louisiana.

ACCORDINGLY, Avondale hereby gives notice that the proceeding bearing 2017-9293 on the docket of the Civil District Court for the Parish of Orleans, State of Louisiana, is removed to the docket of this Court for trial and determination as provided by law, and ask that this Court enter such orders and issue such process as may be proper to bring before it copies of all records and proceedings in the State Case, and to proceed with this civil action as a matter properly removed.

Respectfully submitted,

**IRWIN FRITCHIE URQUHART & MOORE LLC**

*/s/ David Melancon*
GUS A. FRITCHIE (#5751)
DAVID M. MELANCON (#23216)
TIMOTHY F. DANIELS (#16878)
EDWARD W. TRAPOLIN (#27667)
ALEXANDER R. SAUNDERS (#28753)
VICTOR M. DANTIN (#35462)
400 Poydras Street, Suite 2700
New Orleans, Louisiana 70130
Telephone: (504) 310-2100
Facsimile: (504) 310-2101
***Counsel for Huntington Ingalls Incorporated***

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing Notice of Removal was filed electronically with the Clerk of Court using the Court's CM/ECF system and a copy sent to all counsel of record by electronic means on the 14th day of January, 2021.

*/s/ David M. Melancon*