UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FRANK LABARRE                                    CIVIL ACTION

VERSUS                                           NO. 21-89

BIENVILLE AUTO PARTS INC., *et al.*              SECTION M (3)

## **ORDER & REASONS**

Before the Court is a motion for summary judgment filed by defendant Bienville Auto Parts Inc. ("Bienville").[1] Plaintiff Karen Labarre Birdsall, individually and as proper party-in-interest for the now-deceased Frank Labarre, and plaintiff-in-cross-claim Huntington Ingalls Incorporated ("HII") respond in opposition.[2] Bienville replies in further support of its motion.[3] Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons.

**I.    BACKGROUND**

This case arises from personal injuries allegedly caused by exposure to asbestos. In October 2016, Frank Labarre "was diagnosed with a probable asbestos-related lung condition."[4] Throughout his career, from 1948 to 2007, Labarre worked as a tire repairman or salesman in automobile repair shops throughout Louisiana.[5] He even owned his own shop, Fleet Tire Service ("Fleet"), where he worked as a salesman and "performed brake jobs" from approximately 1961

---

[1] R. Doc. 46.
[2] R. Docs. 54, 55.
[3] R. Doc. 58.
[4] R. Doc. 1-1 at 8.
[5] *Id.* at 5.

to 2007.[6] Labarre alleges that through his employment in the "automobile repair industry" he was regularly exposed to asbestos-containing brake products.[7]

Labarre filed this suit in Louisiana state court seeking damages for his asbestos-related illness from defendants Bienville, HII, Honeywell International, Inc. ("Honeywell"), Borg Warner Morse Tec LLC ("Borg"), Ford Motor Company ("Ford"), Fleet, and United Fire & Casualty Company, as Bienville's insurer.[8] Labarre divides the defendants into two groups: (1) the "brake defendants" – Bienville, Honeywell, Borg, and Ford; and (2) the "premises defendants" – HII and Fleet.[9]

With respect to the brake defendants, Labarre alleges that they manufactured, sold, marketed, distributed, and otherwise placed into the stream of commerce asbestos-containing products which "were unreasonably dangerous in their design and marketing."[10] He also alleges that the brake defendants breached various implied and express warranties and were strictly liable or negligent for failing to warn users about the dangers of asbestos.[11] According to Labarre, the non-manufacturer brake defendants were "professional vendors of asbestos-containing products" that "knew or should have known of the defects of the asbestos products they sold, and negligently failed to warn the users of potential health hazards from the use of said products."[12] Moreover, Labarre alleges that the brake defendants, who "knew or should have known that the asbestos products which they sold and supplied were unreasonably dangerous in normal use," were negligent for failing to communicate such information to buyers.[13]

---

[6] R. Doc. 7-3 at 7.
[7] R. Doc. 1-1 at 5.
[8] *Id.* at 3-4.
[9] *Id.*
[10] *Id.* at 5.
[11] *Id.* at 5-7.
[12] *Id.* at 7.
[13] *Id.*

As to the premises defendants, Labarre alleges that he worked with or around asbestos-containing products at those locations, exposing him to hazardous levels of asbestos dust and fibers which ultimately led to his asbestos-related lung disease.[14] He asserts that the premises defendants were, or should have been, aware of the dangers of asbestos and negligently failed to provide him with a safe work environment.[15] He further alleges that the premises defendants are strictly liable under Louisiana Civil Code article 2317.[16]

On January 6, 2018, Labarre died.[17] Thereafter, on March 6, 2018, the complaint was amended to include Barbara Labarre, Frank Labarre's wife, and Karen Labarre Birdsall, Frank Labarre's daughter, as plaintiffs, individually and on behalf of Frank Labarre.[18] In November 2018, Barbara Labarre also died, leaving Birdsall as the sole-remaining plaintiff.[19] On May 30, 2019, plaintiff's expert, Dr. Arthur L. Frank, outlined several potential causes of Frank Labarre's exposure to asbestos which "would have been at levels above background, would have been medically significant, and therefore medically causative of his mesothelioma. This would have included his service in the U.S. Navy, his work with brakes, his time at the Avondale Shipyard, and any other documented exposures that may be forthcoming."[20] On January 14, 2021, after receiving plaintiff's written discovery responses, HII removed the case, alleging a colorable federal contractor defense.[21]

---

[14] *Id.* at 8.
[15] *Id.*
[16] *Id.* at 9.
[17] R. Doc. 1-2 at 4.
[18] *Id.*
[19] R. Doc. 7-1 at 1.
[20] R. Doc. 7-5 at 4.
[21] R. Docs. 1, 16.

## II. PENDING MOTION

Bienville moves for summary judgment arguing that plaintiff cannot meet her burden of proving that it is a "professional vendor" of brake parts as would call for application of the Louisiana Products Liability Act ("LPLA"). Bienville contends that the undisputed summary-judgment evidence proves that it was a non-manufacturer seller of sealed, prepackaged brake parts.[22] Bienville asserts that it never put its name on the products it sold, held them out as its own, or modified them in anyway; nor was it capable of controlling the quality of the product.[23] Bienville argues further that plaintiff cannot prove her negligence claim against it as a non-manufacturer seller because there is no evidence that Bienville knew or should have known that the products it sold to Fleet contained asbestos or were dangerous in any way.[24] Finally, Bienville argues that, as a non-manufacturer seller, it had no duty to warn Frank Labarre of the dangers of asbestos because he was a "sophisticated user" of brake products who had decades of experience in the industry before Fleet began purchasing from Bienville in the mid-1980s.[25]

In opposition, plaintiff argues that there are disputed issues of material fact that preclude summary judgment on all of her claims against Bienville.[26] With respect to Bienville's alleged liability under the LPLA, plaintiff argues that there are disputed issues of material fact as to whether Bienville, as an exclusive distributor of Wagner brake products, exercised control over or influenced the design, construction, or quality of the Wagner products it sold.[27] As to her negligence claim against Bienville as a non-manufacturer seller, plaintiff argues that the conflicting deposition testimony of Bienville's corporate representative, Louis Wallace, Jr., and

---

[22] R. Doc. 46-1 at 11-23.
[23] *Id.* at 21-22.
[24] *Id.* at 23-25.
[25] *Id.* at 25-28.
[26] R. Doc. 55 at 1-4.
[27] *Id.* at 21-25.

4

its longtime sales manager, Ryan "Keith" Williams, demonstrates that there are disputed issues of material fact concerning whether Bienville knew or should have known that the products it sold were dangerous and failed to disclose it.[28] Further, plaintiff argues that Bienville cannot prove its affirmative defense that Frank Labarre was a "sophisticated user" of asbestos-containing brake products because he testified in deposition that he had no knowledge of asbestos or the dangers that it posed.[29]

### III. LAW & ANALYSIS

#### A. Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact. *Id*. at 323. If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *Id*. at 324.

---

[28] *Id.* at 11-15.
[29] *Id.* 15-20. In its opposition to Bienville's motion, HII adopts plaintiff's arguments and adds that "Frank Labarre's significant exposures to respirable asbestos fibers resulting from his work with and around asbestos-containing materials purchased from Bienville creates a genuine issue of material fact in this matter." R. Doc. 54 at 1-4. HII also contends that Bienville's motion does not address plaintiff's claims for breach of express or implied warranty and strict liability. *Id.* at 5-6.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). The substantive law identifies which facts are material. *Id*. Material facts are not genuinely disputed when a rational trier of fact could not find for the nonmoving party upon a review of the record taken as a whole. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986); *EEOC v. Simbaki, Ltd*., 767 F.3d 475, 481 (5th Cir. 2014). Unsubstantiated assertions, conclusory allegations, and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Anderson*, 477 U.S. at 249-50; *Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994); *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994). In ruling on a summary-judgment motion, a court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co*., 530 F.3d 395, 398-99 (5th Cir. 2008). Furthermore, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001). Yet, a court only draws reasonable inferences in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

After the movant demonstrates the absence of a genuine issue of material fact, the nonmovant must articulate specific facts showing a genuine issue and point to supporting, competent evidence that may be presented in a form admissible at trial. *See Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A) & (c)(2). Such facts must create more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. When the nonmovant will bear the burden of proof at trial on the dispositive issue,

the moving party may simply point to insufficient admissible evidence to establish an essential element of the nonmovant's claim in order to satisfy its summary-judgment burden. *See Celotex*, 477 U.S. at 322-25; Fed. R. Civ. P. 56(c)(1)(B). Unless there is a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075-76.

### B. Liability for Asbestos Exposure

To prevail in an asbestos case under Louisiana law, a plaintiff must prove by a preponderance of the evidence that he was exposed to asbestos from the defendant's product and the exposure was a substantial cause of his injury. *Rando v. Anco Insulations Inc.*, 16 So. 3d 1065, 1088 (La. 2009). When there are multiple causes of injury, "a defendant's conduct is a cause in fact if it is a substantial factor generating plaintiff's harm." *Adams v. Owens-Corning Fiberglas Corp.*, 923 So. 2d 118, 122 (La. App. 2005) (citing *Vodanovich v. A.P. Green Indus., Inc.*, 869 So. 2d 930, 932 (La. App. 2004)). Because there is a medically demonstrated causal relationship between asbestos exposure and mesothelioma, every non-trivial exposure to asbestos contributes to and constitutes a cause of mesothelioma. *McAskill v. Am. Marine Holding Co.*, 9 So. 3d 264, 268 (La. App. 2009) (observing that the substantial-factor "burden can be met by simply showing that [the plaintiff] was actively working with asbestos-containing materials"). "Asbestos cases typically involve multiple defendants and courts have analyzed the cases under concurrent causation, a doctrine which proceeds from the assumption that more than one defendant substantially contributed to the plaintiff's injury." *Adams*, 923 So. 2d at 122 (citing *Vodanovich*, 869 So.2d at 933).

Bienville mentions that Frank Labarre's exposure to asbestos from the products it sold to Fleet was insignificant (in its view), when compared to Labarre's 40 years of exposure to asbestos-

7

containing products that predate his contact with products Bienville sold.[30] While it is true that Labarre experienced many sources of asbestos exposure, the evidence before the Court does not support the conclusion that any exposure from products sold by Bienville was trivial – that is, that it could not have been a substantial factor in generating Labarre's harm.

At his perpetuation deposition taken in April 2017, Labarre testified that when he owned and worked at Fleet, he supervised the work and was the primary outside salesman for tires, recaps, and automobile services.[31] Fleet's mechanics performed brake jobs almost every day.[32] Labarre occasionally performed brake jobs or was in the automobile repair bays when the mechanics did.[33] The mechanics used compressed air to blow out the brake drums causing dust to be disbursed into the air.[34] Labarre breathed in that dust.[35]

Peter Labarre ("Peter"), Frank Labarre's nephew, worked at Fleet as a mechanic performing brake jobs from the mid-1970s to 2007.[36] He testified at his deposition that, as brakes wear down, dust accumulates in the drums and rotors and the Fleet mechanics would blow the dust out with an air hose creating a lot of dust in the air.[37] Frank Labarre was near Peter frequently when Peter performed brake jobs, resulting in Frank Labarre breathing in the brake dust, including asbestos dust.[38] Peter ordered the brake parts for Fleet and began purchasing from Bienville in the mid-1980s.[39] The brake parts used at Fleet contained asbestos.[40] Fleet bought Wagner, Raybestos, and Bendix brake pads from Bienville and, early on in their business relationship, the pads all

---

[30] R. Doc. 46 at 2-5.
[31] R. Doc. 55-3 at 11-12.
[32] *Id.* at 8, 21.
[33] *Id.* at 8-9, 26-36
[34] *Id.* at 10, 21.
[35] *Id.* at 10-11.
[36] R. Doc. 55-4 at 2-4.
[37] *Id.* at 4.
[38] *Id.* at 5, 7, 13-14.
[39] *Id.* at 8-9.
[40] *Id.* at 10-11.

contained asbestos.[41] Indeed, Williams, who was a manager at Bienville from 1982 to 2006, testified at his deposition that Fleet was one of his accounts, Fleet bought brake pads from Bienville every day from 1985 to 2007 (as many as 10 to 15 boxes per week), and all brakes that Bienville sold in the 1980s and 1990s, at least, contained asbestos.[42] Thus, even if the level of Labarre's asbestos-exposure from the products sold by Bienville was the exclusive focus of the motion, Bienville would not be entitled to summary judgment.

### C. Strict Liability of Manufacturer or "Professional Vendor"

Under Louisiana law, a plaintiff can recover against a manufacturer by proving that his injury was caused by a condition of the product existing at the time it left the manufacturer's control that rendered the product unreasonably dangerous in normal use. *Adams*, 923 So. 2d at 122; La. R.S. 9:2800.54[43] This is a strict liability standard: "The plaintiff need not prove negligence by the maker in its manufacture or processing, since the manufacturer may be liable even though it exercised all possible care in the preparation and sale of its product." *Adams*, 923 So. 2d at 122. Prior to the enactment of the LPLA, Louisiana law categorized some products, including asbestos, as "unreasonably dangerous per se." *Id.* (discussing *Halphen v. Johns-Manville Sales Corp.*, 484 So. 2d 110, 113-17 (La. 1986)). "A product is unreasonably dangerous per se if a reasonable person would conclude that the danger-in-fact of the product, whether

---

[41] *Id.* at 8-9, 14.
[42] R. Doc. 55-6 at 3-5, 7, 10-12.
[43] The LPLA was enacted in 1988. La. R.S. 9:2800.1, *et seq.* Some Louisiana courts have declined to apply the LPLA when a plaintiff's asbestos-exposure claims span several decades, some of which pre-date the LPLA. *Adams*, 923 So. 2d at 123. Generally, though, a plaintiff's strict liability product claims in a survival action are governed by the law in effect at the time of the decedent's alleged exposure. *Michel v. Ford Motor Co.*, 2019 WL 7562759, at *2 (E.D. La. Feb. 13, 2019) (citing *Asbestos v. Bordelon, Inc.*, 726 So. 2d 926, 939-40 (La. App. 1998)). Labarre's alleged exposure to asbestos from products sold by Bienville began in 1985, and his exposure to asbestos-containing products in general allegedly began in the 1940s. Neither party has briefed whether the LPLA or pre-LPLA law applies to Labarre's claims. It is unnecessary for the Court to delve into this inquiry because the "professional vendor" theory is substantially the same under both pre- and post-LPLA law. *See, e.g., Bellow v. Fleetwood Motor Homes*, 2007 WL 1308382, at *2 (W.D. La. Apr. 13, 2007) (citing *Hoerner v. ANCO Insulations, Inc.*, 812 So. 2d 45 (La. App. 2002)), *adopted*, 2007 WL 9777853 (W.D. La. May 3, 2007).

foreseeable or not, outweighs the utility of the product." *Id.* A manufacturer could be held liable for injuries caused by such a product even if the manufacturer did not know and reasonably could not have known of the danger. *Id.* The LPLA does not recognize the "unreasonably dangerous per se" theory. *Underwood v. Gen. Motors LLC*, 2015 WL 5475610, at *2 n.1 (M.D. La. Sept. 17, 2015), *aff'd*, 642 F. App'x 468 (5th Cir. 2016). Instead, after the enactment of the LPLA, a product can be unreasonably dangerous in construction or composition,[44] in design,[45] due to an inadequate warning,[46] or for failure to conform to an express warranty of the manufacturer.[47] La. R.S. 9:2800.54.

A seller of a product can be held strictly liable as a manufacturer if the plaintiff proves that the seller qualifies as a "professional vendor." Under pre-LPLA Louisiana law, "[a] professional vendor 'is a retailer who does more than simply sell a certain product or products; it must engage in practices whereby it is capable of controlling the quality of the product, such that courts are justified in treating the retailer like a manufacturer.'" *Roy v. Colgate Palmolive Co.*, 2021 WL 1574038, at *3 (E.D. La. Apr. 22, 2021) (quoting *Nelton v. Astro-Lounger Mfg. Co.*, 542 So. 2d 128, 132 (La. App. 1989), and discussing the leading case of *Chappuis v. Sears Roebuck &*

---

[44] "A product is unreasonably dangerous in construction or composition if, at the time the product left its manufacturer's control, the product deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise identical products manufactured by the same manufacturer." La. R.S. 9:2800.55.

[45] "A product is unreasonably dangerous in design if, at the time the product left its manufacturer's control: (1) There existed an alternative design for the product that was capable of preventing the claimant's damage; and (2) The likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product. An adequate warning about a product shall be considered in evaluating the likelihood of damage when the manufacturer has used reasonable care to provide the adequate warning to users and handlers of the product." La. R.S. 9:2800.56.

[46] "A product is unreasonably dangerous because an adequate warning about the product has not been provided if, at the time the product left its manufacturer's control, the product possessed a characteristic that may cause damage and the manufacturer failed to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product." La. R.S. 9:2800.57(A).

[47] "A product is unreasonably dangerous when it does not conform to an express warranty made at any time by the manufacturer about the product if the express warranty has induced the claimant or another person or entity to use the product and the claimant's damage was proximately caused because the express warranty was untrue." La. R.S. 9:2800.58.

*Co.*, 358 So. 2d 926 (La. 1978)). "To prevail against a professional vendor of asbestos-containing products, a plaintiff must show: (1) the defendant held the products out to the public as its own, and (2) the size, volume, and merchandising practices of the defendant bring it within the class of professional vendors, who are presumed to know the defects in their wares." *Dempster v. Lamorak Ins. Co.*, 2020 WL 5659546, at *3 (E.D. La. Sept. 21, 2020) (discussing *Chappuis*). The LPLA incorporates the constituent elements of "professional vendor" into its definition of "manufacturer," which includes: "(a) A person or entity who labels a product as his own or who otherwise holds himself out to be the manufacturer of the product," and "(b) A seller of a product who exercises control over or influences a characteristic of the design, construction or quality of the product that causes damage." La. R.S. 2800:53(a)-(b); *see Bellow*, 2017 WL 1308382, at *2.

The undisputed summary-judgment evidence before the Court demonstrates that Bienville was not a manufacturer of brake parts under the LPLA or a professional vendor of such products under pre-LPLA law. There is no evidence in the record that Bienville held out the products it sold as its own. Wallace, Bienville's owner, testified at his deposition that Bienville never manufactured brake parts, nor did it place its name on any brake parts it sold.[48] Rather, the boxes of brake parts it sold displayed Wagner labels.[49] Williams, at his deposition, confirmed that Bienville did not rebrand or repackage the brake products it sold.[50] Plaintiff has offered no summary-judgment evidence to counter the cited deposition testimony or otherwise raise a genuine issue of material fact as to whether Bienville sold the brake products as its own.

Further, there is no summary-judgment evidence demonstrating that Bienville's sales and merchandising of brake parts were so substantial as to bring it within the class of professional

---

[48] R. Doc. 55-5 at 8.
[49] *Id.*
[50] R. Doc. 55-6 at 9-10.

vendors who are presumed to know the defects in their wares. Wallace testified that Bienville did not advertise, apart from listing its name and number in the telephone book at no charge and holding a crawfish boil for its customers.[51] These acts hardly amount to the substantial merchandising required for professional-vendor status. Moreover, there is no evidence in the record showing that Bienville's relatively small volume of brake-part sales allowed it to exercise any influence over the design, construction, or quality of the products. Wallace and Williams both testified that Bienville "exclusively" sold Wagner brake products for a time and supplemented its inventory with parts made by other manufacturers as needed.[52] Williams testified that Bienville sold mostly Wagner products because Wagner offered a volume discount.[53] Plaintiff argues that this testimony proves that Bienville was Wagner's exclusive distributor and thus, under *Hoerner*, a professional vendor.[54] But there is no evidence that Bienville's sales of Wagner products empowered it to influence the design and composition of the products. If anything, that Bienville sold only Wagner's products for a time shows that Wagner might have been able to exercise some control over Bienville. There is no evidence in the record demonstrating that Wagner was limited to using only Bienville as its vendor or even that Bienville's sales volume was so high that it could exert some influence over Wagner. This distinguishes *Hoerner*, the case upon which plaintiff relies, because in that case the evidence showed that Eagle not only was for a time the exclusive distributor of Fibreboard products in south Louisiana, but also fabricated its own products that were then placed into boxes onto which its name was stenciled, held the products out as its own as a part of its merchandising practices, and had a sufficient size and volume of sales to qualify for the status of professional vendor. *Hoerner*, 812 So. 2d at 60-61.

---

[51] R. Doc. 55-5 at 8-9.
[52] R. Docs. 55-5 at 6-8, 13, 24-27; 55-6 at 12-13.
[53] R. Doc. 55-6 at 14.
[54] R. Doc. 55 at 21-22.

## D. Negligence Liability of Non-Manufacturer Seller of Product

A non-manufacturer seller, such as Bienville, can be liable for damages in tort if it knew or should have known that the product it sold was defective – that is to say, unreasonably dangerous in normal use – and failed to declare the defect to the purchaser. *Alexander v. Toyota Motor Sales, U.S.A.*, 123 So. 3d 712, 714 (La. 2013); *Tunica-Biloxi Indians of La. v. Pecot*, 2006 WL 1228902, at *3 (W.D. La. May 3, 2006). Unlike a manufacturer, a non-manufacturer seller is not presumed to know of a product's defects, nor is it required to inspect a product prior to sale to ascertain whether it has any non-apparent defects. *Tunica-Biloxi Indians*, 2006 WL 1228902, at *3; *Martin v. Henderson,* 505 So. 2d 192, 195 (La. App. 1987).

Here, there are disputed issues of material fact regarding whether Bienville knew or should have known of defects in the products it sold to Fleet, and these disputed issues preclude summary judgment in Bienville's favor on plaintiff's negligence claim. Wallace, Bienville's owner, testified at his deposition that he did not know, at the relevant time, that the products (automobile parts, including brake pads) sold by Bienville contained asbestos.[55] Thus, Bienville never provided any warnings about asbestos to the purchasers of these products.[56] He further testified that Bienville sold brake pads manufactured by Wagner, Bendix, Raybestos, EIS, Delco, and Motorcraft, but he would not be able to tell which ones might have contained asbestos.[57] Wallace also testified that Bienville never knew of the dangers of asbestos.[58] Yet, Bienville employees wore masks when they worked on customers' brake drums and rotors because the work created dust.[59]

---

[55] R. Doc. 55-5 at 10-11.
[56] *Id.* at 23.
[57] *Id.* at 12-13, 26.
[58] *Id.* at 18-19.
[59] *Id.* at 20-22.

13

On the other hand, Williams, who was a manager at Bienville from 1982 to 2006, testified at his deposition that Fleet was one of his accounts and that all the brakes Bienville sold in the relevant time period (*viz.*, 1980s and 1990s) contained asbestos.[60] Williams thought that everyone who bought and sold brake pads at that time would have known that they contained asbestos.[61] Williams also testified that he knew then that asbestos was causing him to have nosebleeds, but he did not know until around the year 2000 that asbestos could cause cancer.[62]

The conflicting testimony of Wallace and Williams raises genuine issues of material fact as to whether Bienville knew that the brake parts it sold to Fleet contained asbestos and whether Bienville knew or should have known that asbestos was dangerous, especially considering that its own employees wore masks when doing brake jobs and Williams knew it caused him to have nosebleeds. Further, OSHSA and EPA had published regulations pertaining to asbestos prior to the relevant period (*viz.*, 1980s and 1990s) raising the question of Bienville's general knowledge about the dangers of asbestos-containing products.[63] Because there is at least some evidence that Bienville knew or should have known that the products it sold contained asbestos and that asbestos was dangerous, Bienville's motion for summary judgment is denied as to plaintiff's negligence claim against it as a non-manufacturer seller.

**E. Sophisticated User**

Under the LPLA, a manufacturer is relieved of its obligation to provide an adequate warning about its product when the user or handler of the product is a "sophisticated user." La. R.S. 9:2800.57(B); *Breaux v. Goodyear Tire & Rubber Co.*, 320 So. 3d 1197, 1203 (La. App. 2021). Louisiana courts have applied the "sophisticated user" defense to a tort claim brought

---

[60] R. Doc. 55-6 at 3-5, 7, 10-11.
[61] *Id.* at 10.
[62] *Id.* at 5-7.
[63] R. Docs. 55-7; 55-8.

against a non-manufacturer seller. *See, e.g., Tunica-Biloxi Indians*, 2006 WL 1228902, at *3 (citing *Contranchis v. Travelers Ins. Co.*, 839 So. 2d 301, 303-04 (La. App. 2003) (sheet metal supplier had no duty to warn builder of metal buildings because builder was "sophisticated user" of sheet metal and had "prior knowledge of applicable safety procedures")). A sophisticated user is someone who is "familiar with the product" or "possesses more than a general knowledge of the product and how it is used," and as a result, is "presumed to know the dangers presented by the product." *Daigrepont v. Exxon Mobile Corp.*, 2021 WL 6070676, at *6 (La. App. Dec. 22, 2021) (quoting *Bates v. E.D. Bullard Co.*, 76 So. 3d 111, 114 (La. App. 2011)). Hence, there is no duty to warn a sophisticated user. *Id.* (citing *Bates*, 76 So. 3d at 114). "Whether an individual is a sophisticated user is ordinarily a question of fact to be decided by the trier of fact." *Id.*

Bienville argues that Frank Labarre's level of sophistication in using brake parts is "undisputed" because he had decades of experience working as a mechanic before Fleet began buying brake parts from Bienville.[64] Plaintiff responds that Labarre's experience as a mechanic does not establish, without more, that he knew the brake parts contained asbestos or that he was aware of the dangers of asbestos.[65] Labarre's deposition testimony supports plaintiff's position that there exist disputed issues as to whether Labarre was a sophisticated user of the brake parts Bienville sold to Fleet. Labarre testified that Fleet's mechanics, not he, ordered the brakes, so he did not know the types of brakes used or whether they contained asbestos.[66] Labarre testified further that he did not know anything about asbestos or its dangers and that he did not wear any protective gear, such as a mask or ventilator, when he was performing, or in the vicinity of others performing, brake work.[67] Bienville has not pointed to any undisputed evidence that Labarre, as

---

[64] R. Doc. 46-1 at 28.
[65] R. Doc. 55 at 16.
[66] R. Doc. 55-3 at 13, 15.
[67] *Id.* at 16-17, 19-20, 23.

an outgrowth of his experience in the automotive industry, possessed a particularized knowledge of the dangers of asbestos brake pads. Neither has Bienville presented undisputed evidence that Fleet, as the buyer of such product and Labarre's employer, had any such particularized knowledge. Thus, Bienville is not entitled to summary judgment on its sophisticated-user defense.

## IV.   CONCLUSION

Accordingly, for the forgoing reasons,

IT IS ORDERED that Bienville's motion for summary judgment (R. Doc. 46) is GRANTED as to dismissing plaintiff's strict liability claim against Bienville as a "professional vendor," and DENIED as to dismissing plaintiff's negligence claim against Bienville as a non-manufacturer seller and as to holding that Frank Labarre was a sophisticated user.

New Orleans, Louisiana, this 1st day of February, 2021.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE